DAN SIEGEL, SBN 056400
EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Emails: danmsiegel@gmail.com;
emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
THE LAW OFFICE OF DEBORAH M. GOLDEN
700 Pennsylvania Ave. SE, 2nd Floor,
Washington, DC 20003
Deborah M. Golden
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.C., | ) Case No. |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** |
| | ) **DEMAND** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, [FIRST NAME | ) |
| UNKNOWN] GONZALES, and SERGIO | ) |
| SAUCEDO, | ) |
| | ) |
| Defendants. | ) |

# INTRODUCTION

1.      Starting in 2018, FCI Dublin Correctional Officer Theodore Ramos (now deceased by suicide) began a campaign of sexual harassment and abuse against Plaintiff T.C.

2.      The abuse was no secret. Captain [First Name Unknown] Gonzalez and Officer Sergio Saucedo actively covered for Ramos and assisted him in his reign of sexual terror.

3.    Other staff members at FCI Dublin, all the way up through Bureau of Prisons leadership, were aware of the culture of sexual abuse at FCI Dublin and did nothing to meaningfully respond or otherwise protect the people incarcerated there.

## JURISDICTION AND VENUE

4.    An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

5.    This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

6.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7.    Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff T.C. will be filing an administrative motion to relate this case to those other cases.

## PARTIES

8.    Plaintiff T.C. was at all times relevant here incarcerated in BOP facilities, including FCI Dublin.

9.    Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin ("FCI Dublin"). FCI Dublin is a federal female low-security correctional institution.

10.    Defendant [First Name Unknown] Gonzales was at all times relevant here a captain at FCI Dublin

11.    Officer Sergio Saucedo was at all times relevant here a line correctional officer at FCI Dublin.

12.     While acting and failing to act as alleged herein, Defendants, and each of them, had complete custody and total control of Plaintiff T.C. Plaintiff T.C. was dependent upon Defendants for her personal security and necessities.

13.     In performing the acts and/or omissions contained herein, Defendants, and each of them, acted under color of federal law, and Plaintiff T.C.is informed and believe each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff T.C. Each of them knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff T.C. and to her constitutionally and statutorily protected rights. Despite this knowledge, Defendants failed to take steps to protect Plaintiff T.C. and to ensure her rights to safety from sexual assault.

## FACTS

14.     FCI Dublin was referred to by staff as "The Rape Club." The nickname was tragically well-deserved.

15.     In 2018, the Plaintiff T.C. was held at FCI Dublin.

16.     Officer Theodore Ramos set his sights on her. He began singling her out as she came out of the dining hall for "pocket checks." He would initiate private conversations during these checks and ask her to meet him at different places around the FCI Dublin compound. He began writing her notes and asking her to write him back.

17.     At the same time, he would humiliate and embarrass her in front of other people. He would accuse her of having HIV, insist on breathalyzing her, or accuse her of other misconduct.

18.     Plaintiff T.C. told her work assignment supervisor that she was afraid of Ramos and wanted to avoid him. Her work supervisor did not follow up, report this concerning statement to any of the proper channels, or otherwise begin an investigation.

19.     In October 2019, Ramos ordered her to meet him in the mop closet.

20.     She went there on her way back from her assigned job, picking up goose excrement. Ramos began kissing Plaintiff T.C. and fondling her. He put his hands down her pants and groped her vulva, while he unzipped his own. Then he pushed her head down and forced her to perform oral sex. He ejaculated in her mouth. When he was done, he sent her back to her unit.

21.  Plaintiff T.C. was afraid of disobeying Ramos. She saw that he and Officer Saucedo would target people they did not like by taking their belongings and hanging them from trees around the compound. From these actions, Plaintiff T.C. deduced that other staff members, at a minimum, acquiesced in Ramos' flaunting of the rules of the prison.

22.  In February 2020, Plaintiff T.C. was sent to another BOP prison, but came back to FCI Dublin in August of that year.

23.  At that time, Ramos would come to her cell window, seemingly knowing whenever she was there.

24.  In April 2021, Ramos came to Plaintiff T.C.'s cell window and ordered her to "give [him] a show," and made her strip naked and masturbate for him. That episode was interrupted when her cellmate returned.

25.  Around that same time, Ramos caught Plaintiff T.C. and other women with a homemade cigarette lighter. All the other women were sent to segregation in the Special Housing Unit (SHU). Plaintiff T.C. understood that she was spared segregation because she followed his sexual commands.

26.  In January or February 2022, Ramos ordered Plaintiff T.C. to meet him by the fire exit where there were no camera. Ramos ordered her to pull down her pants. She did. He turned her, bent her over, and penetrated her vagina with his penis. When he ejaculated, he sent her back to work assignment.

27.  Later, he told her "you know I have friends and if you say anything, I'll bury your ass in the SHU."

28.  At one point, Plaintiff T.C. asked for a BP-10, the form by which people in the custody of the BOP can submit a sensitive administrative grievance. The supervisor asked her "who are you snitching on?"

29.  For reasons that remain unclear, on December 5, 2022, Captain Gonzalez ordered that she be put in the SHU and removed her privileges to contact her fourteen-year-old daughter. They also removed her commissary privileges.

30.     When Plaintiff T.C. complained, Gonzalez, Saucedo, and Ramos all said that if she paid them $2,000, she would be able to have her commissary privileges back.

31.     Plaintiff T.C. understood that this was a message to not tell anyone what Ramos did to her.

32.     Ramos also used Plaintiff T.C.'s time in the SHU to search her cell and take all of the letters he had written her.

33.     When the DOJ task force came to FCI Dublin, Plaintiff T.C. told them some, but not all, of what Ramos had done to her.

34.     In retaliation, she was transferred to Hazelton in West Virginia, where she could not continue the HVAC training in which she had been participating.

35.     Further, in retaliation, BOP staff have taken approximately 500 days credit under the First Step Act.

36.     Defendants' acts caused Plaintiff T.C. severe mental, physical, and emotional harm and extended her stay in prison.

**EXHAUSTION**

37.     On June 8, 2023, Plaintiff T.C., through former counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office. The BOP has not substantively responded.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(FTCA Action against the United States)**
**(Cal. Civ. Code § 52.4)**

38.     Plaintiff T.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

39.     Plaintiff T.C. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employee Ramos, Saucedo, and Gonzalez.

40.     The United States is named as a defendant for the acts these individual employees under the Federal Tort Claims Act.

41.    These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

42.    Their positions as correctional officers and supervisors were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

43.    Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

44.    Ramos discriminated against Plaintiff T.C. based on her gender when he repeatedly sexually abused her, by physically subjecting her to sexual acts.

45.    Saucedo and Gonzalez discriminated against Plaintiff T.C. based on her gender when they covered for Ramos and assisted him in trying to silence her.

46.    By these acts, Ramos, Saucedo, and Gonzales caused Plaintiff T.C. physical, mental, and emotional injuries and well as injury to her personal dignity.

**SECOND CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(FTCA Action against the United States)**
**(Cal. Civ. Code § 1708.5)**

47.    Plaintiff T.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

48.    Plaintiff T.C. brings this claim for sexual assault under the Federal Tort Claims Act for violation of California Civil Code§ 1708.5 against the United States based on the conduct of its employee Ramos.

49.    Ramos violated Plaintiff T.C.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

50.    Ramos' sexual abuse of Plaintiff T.C. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

51.    Ramos subjected Plaintiff T.C. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff T.C.'s person.

52.     By intentionally subjecting Plaintiff T.C. to sexual acts, Ramos acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

53.     By repeatedly subjecting Plaintiff T.C. to sexual acts Ramos caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

### THIRD CLAIM FOR RELIEF
### BATTERY
### (FTCA Action against the United States)
### (California State Law)

54.     Plaintiff T.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

55.     Plaintiff T.C. brings this claim for battery under the Federal Tort Claims Act based on California state law against the United States for the conduct of its employee Ramos.

56.     Ramos committed battery against Plaintiff T.C. by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

57.     The sexual abuse of Plaintiff T.C., an inmate was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

58.     Ramos subjected Plaintiff T.C. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff T.C.'s person.

### FOURTH CLAIM FOR RELIEF
### BATTERY
### (FTCA Action against the United States)
### (California State Law)

59.     Plaintiff T.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

60.     Plaintiff T.C. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of Ramos.

61.     Ramos engaged in outrageous conduct by repeatedly subjecting Plaintiff T.C. to sexual acts while she was incarcerated as an inmate in his employer's custody. He abused his authority over Plaintiff T.C. and their power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

62.     Ramos' sexual abuse caused Plaintiff T.C. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

63.     Ramos intended to cause Plaintiff T.C. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse of an inmate.

### FIFTH CLAIM FOR RELIEF
### BANE ACT
### (FTCA Action against the United States)
### (Cal. Civ. Code § 52.1)

64.     Plaintiff T.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

65.     Defendant United States, by the actions of its employees Ramos, Gonzales, and Saucedo, while Plaintiff T.C. was in custody, by threat, intimidation, and/or coercion, violated Plaintiff T.C.'s rights under California Civil Code § 52.1 by interfering with her right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth amendment to be free of cruel and unusual punishment.

66.     As a proximate result of their acts, Plaintiff T.C. sustained damage and injury.

### SIXTH CLAIM FOR RELIEF
### TRAFFICKING VICTIMS PROTECTION ACT
### (against Gonzalez and Saucedo)
### (18 U.S.C. § 1581, *et seq.*)

67.     Plaintiff T.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

68.     Gonzalez and Saucedo knew or should have known that Ramos had engaged in commercial sex acts with the Plaintiff T.C. in violation of the TVPA.

69.     Ramos knowingly recruited, enticed, and solicited Plaintiff T.C. by offering benefits and things of value, such as not being placed in the SHU, for engaging of sex acts.

70.     Ramos made Plaintiff T.C. engage in sex acts through force and coercion.

71.     Gonzales and Saucedo were knowingly aware of and participating in Ramos' scheme to obtain sexual acts from Plaintiff T.C.

72.     Their conduct has caused Plaintiff T.C. serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

## SEVENTH CLAIM FOR RELIEF
### CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT
### (against Gonzalez and Saucedo)
### (Cal. Civ. Code § 52.5)

73.     Plaintiff T.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

74.     Gonzalez and Saucedo knew or should have known that Ramos had engaged in commercial sex acts with the Plaintiff T.C. in violation of the California TVPA.

75.     Ramos knowingly recruited, enticed, and solicited Plaintiff T.C. by offering benefits and things of value, such as not being placed in the SHU, for engaging of sex acts.

76.     Ramos made Plaintiff T.C. engage in sex acts through force and coercion.

77.     Gonzales and Saucedo were knowingly aware of and participating in Ramos' scheme to obtain sexual acts from Plaintiff T.C.

78.     Their conduct has caused Plaintiff T.C. serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## PUNITIVE DAMAGES

79.     In taking the actions described above, the individual Defendants intentionally and maliciously violated Plaintiff T.C.'s civil rights and/or acted with reckless disregard as to whether their actions violated Plaintiff T.C.'s civil rights.

80.     In taking the actions described above, the individual Defendants acted with oppression, fraud and/or malice.

81.     As such, Plaintiff T.C. claims punitive damages against the individual Defendants in an amount to be determined by a jury.

**PRAYER FOR RELIEF**

82.    Plaintiff T.C. prays for judgment against Defendants, and each of them, as follows:

    (a)    An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff T.C. in an amount to be determined at trial;

    (b)    An award to Plaintiff T.C. of the costs of this suit and reasonable attorneys' fees and litigation expenses including expert witness fees; and

    (c)    For such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

83.    Plaintiff T.C. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: December 7, 2023

                          SIEGEL, YEE, BRUNNER & MEHTA

                          By_____
                              EmilyRose Johns

                          *Attorneys for Plaintiff*